**WADE AND SONS, INC., d/b/a Consolidated Service Company, Browning Construction Company, and Federal Insurance Company, Appellants,**

v.

**AMERICAN STANDARD, INC., d/b/a American Standard Products, Inc. d/b/a The Trane Company, Appellee.**

No. 04–02–00857–CV.

Court of Appeals of Texas, San Antonio.

Dec. 17, 2003.

---

Ronald S. Schmidt, Schmidt & Davis, P.C., San Antonio, for appellant.

Timothy B. Poteet, David E. Chamberlain, Chamberlain McHaney, Austin, for appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

This appeal arises out of a dispute over a commercial construction project. In fourteen issues, Wade and Sons, Inc. d/b/a Consolidated Service Company ("Consolidated"), Browning Construction Company ("Browning"), and Federal Insurance Company ("Federal") appeal the trial court's judgment awarding damages to American Standard, Inc. d/b/a American Standard Products, Inc. d/b/a The Trane Company ("Trane"). In our opinion and judgment of November 5, 2003, we overruled all issues and affirmed the judgment of the trial court. On November 20, 2003, Consolidated [1] filed a motion for rehearing. We deny Consolidated's motion for rehearing. However, to correct a factual misstatement, we withdraw our opinion issued on November 5, 2003 and substitute this opinion in its place. Our judgment issued on November 5, 2003, however, remains unchanged.

### BACKGROUND

Needing to remodel a building in its corporate headquarters compound, HEB Grocery Stores, Inc. ("HEB") sought bids from construction companies. In prepar-

---

1. Appellants include Consolidated, Browning, and Federal. However, as appellants filed one brief on the merits and one motion for rehearing, we will refer to appellants as "Consolidated."

ing its bid to HEB, Browning, a general contractor, sought a bid from Consolidated, a mechanical contractor, for installation of air-conditioning units. Consolidated, in turn, requested a bid from Trane, seeking to know at what price Trane would supply the units. In response, on March 10, 1998, Trane sent Consolidated a "Proposal." According to Trane, attached to this proposal was a document entitled "Standard Terms and Conditions." Consolidated, on the other hand, claims that the terms and conditions were not attached to the proposal.

Browning, the general contractor, was awarded the contract on the building. Consolidated was awarded the subcontract. After being awarded the subcontract, on April 29, 1998, Henry Wade, the president of Consolidated, prepared "Purchase Order 302–017Q." In that purchase order, Consolidated sought to purchase the units "as specifically detailed in the proposal dated 3/10/98 and in accordance with the plans, specifications and all other related documents" for $250,000. At this point, Consolidated claims that the contract was formed and that it expected delivery of the units in June of 1998. Trane disagrees, stating that no contract was formed until Consolidated's credit application was approved on July 30, 1998. On that date, Trane stamped and signed its approval on Consolidated's purchase order: "ACCEPTED: Acknowledged, however and in accordance with the terms and conditions of sale described on the attached sheet." These are the same terms and conditions that Trane says its sent out with its proposal.

The units were not delivered until August of 1998 and did not have the "piping packages"[2] installed. Trane's proposal provided for the piping packages to be factory installed. Because the project was now behind schedule, instead of sending the units back to Trane, Consolidated installed the units in the building without the piping packages. Trane hired EZ Mechanical to fabricate the piping packages for Consolidated to install in the field. However, EZ Mechanical's piping packages did not fit correctly. Consolidated would take the piping packages apart and redo them. So, after EZ Mechanical had fabricated a little more than half of the packages, Consolidated took over the job and began fabricating the rest. Consolidated then had to install the piping packages on the units in a finished space. According to Consolidated, fabrication and installation of the piping packages cost $74,074. Although Consolidated's phase of the project was due to be finished in September of 1998, Consolidated still had not finished in March of 1999 when Browning terminated Consolidated's subcontract. According to Timothy Wayne Bentley, the project manager for Browning, Consolidated was not properly supervising the work, was not providing a sufficient number of workers, nor was it providing qualified workers.

Browning filed a declaratory action against Consolidated. Consolidated counterclaimed against Browning and brought a third-party action against HEB and Trane. Consolidated claimed that Trane was untimely in its delivery of the units, causing Consolidated substantial damages. Trane filed a cross-claim against Consolidated and Browning for monies due under the contract. Trane also filed a suit on a sworn account against Consolidated and Browning. And, Trane asserted a claim against Browning's surety, Federal, on the

---

2. The briefs also refer to these as "valve" packages.

"Bond to Indemnify Against Lien" procured by Browning. Trane alleged $58,686.30 pursuant to its mechanic's lien, and an additional $10,036.70 in damages on the contract not subject to the lien.

Further, in its answer to Consolidated's claim, Trane asserted that the parties, pursuant to the "Standard Terms and Conditions," had "agreed to the exclusion of all express and implied warranties, including all warranties of merchantability and fitness for a particular purpose, with the sole exception of the written warranty set forth in the contract." And, Trane alleged that the same terms and conditions provided that Trane would have no liability whatsoever "until said products ha[d] been paid for and then said liability shall be limited to the purchase price of the equipment shown to be defective." Thus, according to Trane, because Consolidated had not paid the full price of $250,000, Trane had no liability. And, even if it did, Consolidated's damages were limited to the purchase price. Further, Trane contended that all of Consolidated's damages are incidental and consequential, damages that the terms and conditions specifically excludes.

Consolidated nonsuited HEB. Browning's and Consolidated's claims against one another were settled before trial.[3] Consolidated's and Trane's claims thus proceeded to trial. Before trial, Trane filed a motion in limine asserting the defenses outlined above. At trial, the trial court heard Trane's motion in limine and ruled in its favor: Consolidated would not be permitted to present any evidence of incidental or consequential damages. The case was tried before the bench. Although the trial court granted the motion in limine, Consolidated made several bills of exceptions, proving what its incidental and consequential damages would be. The trial court entered judgment for Trane against Consolidated and Browning in the amount of $68,723.00. The trial court awarded Trane judgment for part of this amount, $58,686.30, against Federal on its surety bond. The trial court also awarded Trane $30,000 in attorney's fees for trial, $2,500 in attorney's fee if the case was appealed to the court of appeals, and $2,500 if the case was appealed to the supreme court.

### IMPLIED FINDINGS OF FACT

After the non-jury trial, the trial court did not enter findings of fact and conclusions of law.[4] Thus, we presume that the trial court resolved all questions of fact in support of the judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Brown v. Comm'n for Lawyer Discipline*, 980 S.W.2d 675, 678–79 (Tex.App.-San Antonio 1998, no pet.). However, when the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency on appeal. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002). For legal sufficiency points, if there is more than a scintilla of

---

3. In the settlement agreement between Consolidated and Browning, Browning agreed to pay Consolidated $85,000. In return, Consolidated agreed to indemnify, defend, and hold harmless Browning as principal and Federal as surety from and against any and all claims of Trane arising out of the HEB project or the bond to indemnify.

4. Although Consolidated filed a request for findings of fact and conclusions of law, it did not file a notice of past due findings of fact and conclusions of law as required by Texas Rule of Civil Procedure 297.

evidence to support the finding, the no evidence challenge fails. *Id.* When reviewing a factual sufficiency challenge, we must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001).

## CONTRACT FORMATION

In its first five issues, Consolidated presents what it labels "contract formation issues." Basically, Consolidated argues that the trial court erred in determining that the terms and conditions attached by Trane became a part of the contract between Consolidated and Trane. In the same context, Consolidated also brings legal and factual sufficiency issues, arguing the trial court's determination that the terms and conditions became a part of the contract is not supported by the evidence or is against the great weight and preponderance of the evidence.

Consolidated claims the following events occurred: when Trane faxed its proposal to Henry Wade, that proposal only contained four pages; the fifth page outlining the "terms and conditions" was not faxed. Consolidated then accepted Trane's proposal by sending Trane a purchase order incorporating the proposal. At that point, Consolidated argues that the contract was formed. Trane then faxed its "acceptance" of the purchase order and attached terms and conditions. According to Consolidated, pursuant to section 2.207 of the U.C.C.,[5] the "terms and conditions" are not additional terms that became a part of the contract, because (1) the additional terms were not tendered within a reasonable time and (2) the additional terms materially alter the contract.

Consolidated's argument, however, fails. Whether the contract was formed when Consolidated sent Trane its purchase order or on July 30, 1998, when Trane faxed its "acceptance" to Consolidated's purchase order, there is legally sufficient evidence that the terms and conditions became a part of the contract.

■ Even if we assume that the contract was formed when Consolidated sent Trane its purchase order, we must presume that the terms and conditions were a part of the contract at that time. *See*

5. Section 2.207, "Additional Terms in Acceptance or Confirmation," provides:
 (a) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
 (b) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
 (1) the offer expressly limits acceptance to the terms of the offer;
 (2) they materially alter it; or
 (3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
 (c) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such cases the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this title.
 TEX. BUS. & COM.CODE ANN. § 2.207 (Vernon 1994).

*Worford,* 801 S.W.2d at 109. Consolidated's purchase order incorporated Trane's original proposal. And, there is evidence that the terms and conditions were attached to Trane's original proposal. According to Scott Hutcheson, an employee of Trane's, nothing is faxed out of Trane's office without the terms and conditions attached. Further, appearing at the bottom of each page of Trane's proposal is the following: "page 1 of 5," "page 2 of 5," "page 3 of 5," etc. This indicates that the proposal did indeed contain five pages, not four. There was, thus, some evidence that the terms and conditions were a part of Trane's original proposal.

Similarly, if we assume the contract was not formed until July 30, 1998 when Trane faxed its "acceptance" to Consolidated's purchase order, there was some evidence that the terms and conditions are not additional terms pursuant to section 2.207 of the U.C.C. Again, there is evidence that the terms and conditions were attached to Trane's original proposal. Consolidated's purchase order incorporated the proposal. Thus, when Trane faxed its acceptance and attached the terms and conditions, these terms and conditions were not new terms. These terms had already been exchanged and incorporated into Consolidated's purchase order.

Either way, the terms and conditions are not additional terms. Thus, we need not reach whether the terms were seasonable or whether they materially altered the contract.

█ With regard to factual sufficiency, as pointed out by appellants in their reply brief, Hutcheson testified that it is Trane's practice to always fax out the terms and conditions. He testified that in 1994, there was a problem with the terms and condi-

tions not being faxed out with documents, but since then "it's been a very large part of our business to make sure the terms and conditions are faxed out." Consolidated's attorney pointed out, however, that when he copied Trane's file, Trane's proposal did not have the terms and conditions attached. According to Hutcheson, it is not uncommon to not have the terms and conditions attached to documents in Trane's file because Trane tries to save paper in its files. Hutcheson testified that because the terms and conditions is a standard document that everyone knows about, there is no need to have the terms and conditions attached to every document in Trane's files. Supporting Hutcheson's testimony is the proposal itself, which states that it contains five pages, not four. On the other hand, Henry Wade testified that he only received four pages of Trane's proposal and that he did not receive the terms and conditions with Trane's proposal. He then testified that he did not remember seeing the terms and conditions at the time Trane's proposal was faxed to him. After reviewing the entire record in a neutral light, we cannot determine that the evidence is factually insufficient.

We overrule Consolidated's first five issues.

### CONTRACT INTERPRETATION ISSUES

In its sixth, seventh, eighth, ninth, tenth, and eleventh issues, Consolidated argues that the trial court should not have excluded evidence related to its damages. Specifically, in its sixth and eleventh issues, Consolidated contends that because the terms and conditions "materially altered the contract provisions of the offer to purchase set forth in the purchase order issued by Consolidated to Trane," the trial court erred in excluding evidence of its

damages. We have already explained why the terms and conditions are not additional terms. We, therefore, overrule Consolidated's sixth and eleventh issue.

■ In its eighth issue, Consolidated argues that because its damages relating to the piping packages were direct damages, the trial court erred in excluding evidence of such damages. Trane, on the other hand, argues that these damages were incidental or consequential damages barred by the contract. The terms and conditions excluded incidental or consequential damages:

> In no event shall Trane be liable for any incidental or consequential damages resulting from the use, misuse, or inability to use the product. This exclusion applies *regardless of whether such damages are sought based on breach of warranty, breach of contract,* negligence, strict liability in tort, or any other legal theory. Should Trane nevertheless be found liable for any damages, they shall be limited to the purchase price of the equipment.

(emphasis added). Section 2.719 of the U.C.C. allows parties to limit or exclude consequential damages in their contracts:

> Consequential damages may be limited or excluded unless the limitations or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

TEX. BUS. & COM.CODE ANN. § 2.719(c) (Vernon 1994). Thus, if Consolidated's damages were consequential, then the trial court did not err in excluding evidence of them.

Consolidated's damages arise out of having to fabricate and install the piping packages for the units and the resulting delay on the project. According to Consolidated, because it brought a breach of contract claim, not a breach of warranty claim, these damages are not incidental or consequential ones but direct breach of contract damages pursuant to UCC section 2.714. Section 2.714, "Buyer's Damages for Breach in Regard to Accepted Goods," provides,

> (a) Where the buyer has accepted goods and given notification (subsection (c) of section 2.607) he may recover as damages for any non-conformity of tender the loss resulting *in the ordinary course of events* from the seller's breach as determined in any manner which is reasonable.
>
> (b) The *measure of damages for breach of warranty* is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
>
> (c) In a proper case any incidental and consequential damages under the next section may also be recovered.

TEX. BUS. & COM.CODE ANN. § 2.714 (Vernon 1994) (emphasis added). Although Consolidated recognizes that section 2.714 defines the measure of damages as the difference in value between the goods as accepted and the value they would have had if they had been as warranted, Consolidated emphasizes that section 2.714 allows for recovery of other damages "under special circumstances show[ing] proximate damages of a different amount." *Id.* The issue, however, is not whether section 2.714 allows different damages; the issue is whether Consolidated's damages are direct or whether they are incidental and consequential.

At common law, actual damages can be either direct or consequential. Direct damages are the necessary and usual result of the defendant's wrongful act; they flow naturally and necessarily from the wrong. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex.1997). Direct damages compensate the plaintiff for the loss, damage, or injury that is *conclusively presumed to have been foreseen or contemplated* by the defendant as a consequence of his breach of contract or wrongful act. *Id.* Consequential damages, on the other hand, result naturally, but not necessarily, from the defendant's wrongful act. *Id.; Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex.1995). Under the common law, consequential damages need not be the usual result of the wrong, but must be foreseeable and must be directly traceable to the wrongful act and result from it. *Arthur Andersen*, 945 S.W.2d at 816.

The UCC has also defined direct damages and incidental and consequential damages. Subsection (a) to section 2.714 discusses "damages resulting in the ordinary course of events," i.e. direct damages, while subsection (c) provides that incidental and consequential damages may also be recovered. TEX. BUS. & COM.CODE ANN. § 2.714 (Vernon 1994). Section 2.715 of the UCC defines incidental and consequential damages:

(a) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover[6] and any other reasonable expense incident to the delay or other breach.

(b) Consequential damages resulting from the seller's breach include

(1) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(2) injury to person or property proximately resulting from any breach of warranty.

*Id.* § 2.715.

Under either the common law definition or section 2.715's definition, Consolidated's damages are incidental and consequential damages. At the time the parties entered into the agreement, Consolidated's damages, i.e. Trane delivering units without the piping packages and Consolidated then fabricating and installing the piping packages in a finished space, could not have been conclusively presumed to have been foreseen or contemplated by the parties. *See Arthur Andersen*, 945 S.W.2d at 816 (defining direct damages). Nor are they damages resulting in the ordinary course of events. *See* TEX. BUS. & COM.CODE ANN. § 2.714 (Vernon 1994) (same). Instead they are damages not the usual result of the wrong, but are foreseeable and directly traceable to the wrongful act. *See Arthur*

**6.** When a seller delivers nonconforming goods, a buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller. TEX. BUS. & COM.CODE ANN. § 2.712(a) (Vernon 1994). As damages, the buyer may recover the difference between the cost of the cover and the contract price together with any incidental and consequential damages as defined in section 2.715, but less expenses saved in consequences of the seller's breach. *Id.* § 2.712(b).

*Andersen,* 945 S.W.2d at 816 (defining consequential damages); *see also* TEX. BUS. & COM.CODE ANN. § 2.715(b) (Vernon 1994) (same). And, they are reasonable expenses incident to delay or other breach. *See* TEX. BUS. & COM.CODE ANN. § 2.715(a) (Vernon 1994) (defining incidental damages). We, therefore, hold that, except for damages relating to the thermostats, Consolidated's damages are incidental and consequential. As these damages are incidental and consequential, they are barred by the contract.

 Even if these damages were not incidental and consequential, they would be still be barred by another clause in the contract. The terms and conditions provide that "[n]o liability whatever shall attach to Trane until said products have been paid for and then said liability shall be limited to the purchase price of the equipment shown to be defective." According to Trane, the units had not been paid for because all of the invoices had not been paid in full. Consolidated, on the other hand, argues in its seventh issue that it had paid for 161 units, a substantial portion of the units purchased in the purchase order. Thus, Consolidated argues that it should be able to collect on its damages related to these 161 units.

 The interpretation of an unambiguous contract is a question of law, which is reviewed de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–51 (Tex.1999). The terms and conditions incorporated by the purchase order unambiguously states no liability shall attach until the *products* have been paid for. Thus, because Consolidated had not paid for all of the units, i.e. products, its damages are barred.

In its ninth issue, Consolidated argues that the trial court erred in not allowing evidence of damages incurred by its purchase of thermostats that Trane was supposed to have purchased pursuant to the contract. However, because Consolidated did not pay for all of the units, the terms and conditions also bars these damages.

In its tenth issue, Consolidated argues that its damages relating to the piping packages should have been admitted because "[a] party who enters into a contract calling for performance is under a *tort duty implied by law* 'to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract.'" (emphasis added) (citing *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508 (1947)). According to Consolidated, Trane was negligent with regard to its failure to supply the piping packages and that negligence affords a separate and distinct reason for Consolidated to be able to recover from Trane for the direct cost of fabricating and installing the piping packages.

We need not, however, reach the merits of Consolidated's tenth issue. As discussed above, the damages relating to the piping packages are incidental and consequential damages. The terms and conditions bars Consolidated from collecting any incidental and consequential damages in any claim. And, even if the damages were not incidental and consequential, the terms and conditions bars liability unless Consolidated paid for all of the units, which it did not.

For the reasons stated above, we overrule issues six, seven, eight, nine, ten, and eleven.

### LIABILITY OF THIRD PARTIES

 In its twelfth, thirteenth, and fourteenth issues, Browning and Federal

argue that the trial court should not have entered judgment against them. The judgment holds Browning and Consolidated jointly liable for $68,723. According to Browning, there is legally and factually insufficient evidence to hold Browning liable for Trane's suit on sworn account against it, because there is no evidence that "Trane sent a bill to Browning or that Browning accepted the equipment or that Browning took any action to make itself liable to Trane." In response, Trane points to the Affidavit of Tim Eimermann attached to its first amended cross claim. Trane's pleading with the attached affidavit was admitted in evidence for all purposes as Exhibit 17. The affidavit states that demand for payment of the total amount owed to Trane was made to Consolidated and Browning and that each have refused and failed to tender the amount owed. Further, it is undisputed that the units were supplied by Trane and installed at the Browning project for HEB. Thus, the evidence is factually and legally sufficient to support Browning being liable with respect to the sworn account. We, therefore, overrule Consolidated's twelfth issue.

 With respect to Trane's bond claim, Browning and Federal argue that Trane did not prove that they complied with section 53.055 of the Texas Property Code. Section 53.051 provides that to perfect the lien, a person must comply with this subchapter. TEX. PROP.CODE ANN. § 53.051 (Vernon 1995). Section 53.055 requires a party that files a mechanic's lien affidavit to send a copy of the affidavit by registered or certified mail to the owner or reputed owner at the owner's last business or residence address not later than the fifth day after the affidavit is filed with the county clerk's office. *Id.* § 53.055 (Vernon

Supp.2003). According to Consolidated, there is no evidence that copies of the affidavit were sent to HEB and Browning, the general contractor, or such copies were sent by registered or certified mail.

According to Trane, however, it was not required to prove that it complied with section 53.055, because pursuant to Texas Rule of Civil Procedure 54, it pled that all conditions precedent have been performed or have occurred. Consolidated, however, claims that Trane did not sufficiently plead that all conditions to enforceability of the lien had occurred. Rule 54 provides:

> In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so plead, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party.

TEX.R. CIV. P. 54. On page two of its first amended cross claim, Trane states that "[t]his is a suit to foreclose on a Bond to Indemnify Against *Lien* and a suit on sworn account. All conditions precedent have been performed or have occurred." (emphasis added). This language sufficiently placed Consolidated on notice of Trane's suit and of Trane's performance or occurrence of all conditions precedent. We hold that pursuant to rule 54, Trane's petition was sufficient.

 Because Trane pled that all conditions precedent had been performed or occurred, Trane was required to prove only the conditions precedent that had been specifically denied by the opposite parties. Consolidated failed to specifically deny that Trane did not give proper notice. Neither did Federal. Browning filed an

answer "specifically deny[ing] that all conditions precedent to [Trane]'s right to recover under the bond have been performed by [Trane] or waived by [Browning]." This denial, however, is not sufficient. Texas Rule of Civil Procedure 54 requires the opposing party to specifically deny which conditions precedent have not been performed or have not occurred. *See* Tex.R. Civ. P. 54. A defendant cannot generally deny that the plaintiff has not proved all conditions precedent, but must specifically deny which conditions precedent have not been met. *See id.; Gill Sav. Assn. v. Int'l Supply Co.*, 759 S.W.2d 697, 701 (Tex.App.-Dallas 1988, writ denied); *Sunbelt Constr. Corp. v. S & D Mech. Contractors, Inc.*, 668 S.W.2d 415, 417–18 (Tex.App.-Corpus Christi 1983, writ ref'd n.r.e.). By failing to specifically deny that Trane failed to give proper notice, Consolidated, Browning, and Federal waived their right to complain of such failure on appeal. *See Gill,* 759 S.W.2d at 701; *Sunbelt,* 668 S.W.2d at 418. We, therefore, overrule Consolidated's fourteenth issue.

In its thirteenth issue, Consolidated contends that if we "reverse and remand this case for trial of issues raised by Consolidated in its claims against Trane, the judgment against Browning and Federal should be vacated and remanded as well." As we have overruled all of Consolidated's issues and as such, affirm the judgment of the trial court, we need not reach this issue. Issue thirteen is, therefore, overruled.

### CONCLUSION

Having overruled all fourteen issues, we affirm the judgment of the trial court.