ACCEPTED
15-25-00058-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
8/11/2025 8:34 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-25-00058-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
8/11/2025 8:34:00 PM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS
FOR THE FIFTEENTH JUDICIAL DISTRICT
AUSTIN, TEXAS

THE BOARD OF REGENTS OF THE TEXAS A&M UNIVERSITY SYSTEM
APPELLANT,

V.

BE&K BUILDING GROUP, LLC
APPELLEE.

ON APPEAL FROM THE 272ND JUDICIAL DISTRICT COURT
OF BRAZOS COUNTY, TEXAS

TRIAL COURT CASE NO. 20-002171-CV-272

# BRIEF OF APPELLEE BE&K BUILDING GROUP, LLC

Thomas O. Crist (TSBN #24119645)
Benesch, Friedlander, Coplan &
Aronoff LLP
127 Public Square, Suite 4900
Cleveland, OH 44114
Phone:  (216) 363-4500
Facsimile:  (216) 636-4588
tcrist@beneschlaw.com

Frank A. Domino (TSBN #24038864)
MEHAFFYWEBER, PC
One Allen Center
500 Dallas, Suite 2800
Houston, Texas 77002
Phone: (713) 655-1200
Facsimile: (713) 655-0222
fdomino@mehaffyweber.com

**APPELLEE DOES NOT REQUEST ORAL ARGUMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iv

IDENTITY OF PARTIES AND COUNSEL ...................................................... viii

REFERENCE CITATION GUIDE ................................................................... ix

STATEMENT OF THE CASE ............................................................................x

STATEMENT REGARDING ORAL ARGUMENT ......................................... xi

INTRODUCTION ...............................................................................................1

ISSUES PRESENTED .........................................................................................2

STATEMENT OF FACTS .....................................................................................3

A. Factual Background: BE&K contracted with TAMU to build a university building, and the project was plagued by impediments that TAMU caused........3

    1.   TAMU hired BE&K to build on the Tarlton State campus. .........................3

    2.   TAMU impeded progress on the project by expanding the project's scope, yet refusing to compensate BE&K for the additional work..........................4

B. Procedural Background: BE&K sued for breach of express provisions of the CMAR Agreement, TAMU contested jurisdiction, and the trial court rejected TAMU's plea to the jurisdiction...................................................................6

SUMMARY OF ARGUMENT .............................................................................8

ARGUMENT .....................................................................................................10

STANDARD OF REVIEW ................................................................................10

A. The trial court correctly concluded that it had jurisdiction because Chapter 114 waived TAMU's sovereign immunity. ...............................................................11

    1.   Chapter 114 waives state agencies' sovereign immunity for construction-contract claims....................................................................................11

    2.   BE&K satisfied both elements of Chapter 114's immunity waiver. ..........12

B. *Pepper Lawson* confirms that TAMU waived sovereign immunity and that the Texas judiciary has jurisdiction to adjudicate BE&K's claims for breach of express provisions of the CMAR Agreement. .................................................15

C. The Court should reject TAMU's attempts to evade *Pepper Lawson*'s plain holding. ..........................................................................................................17

    1. Whether conditions precedent were satisfied is not a jurisdictional fact, as Pepper Lawson recognizes. ....................................................................18

    2. TAMU's attempts to distinguish Pepper Lawson flounder. ........................20

    3. Authorities applying other immunity statutes, like Pepper Lawson, reject attempts like TAMU's here to convert merits questions into jurisdictional questions. ..........................................................................................23

D. Even if Chapter 114 and *Pepper Lawson* permitted inquiring into whether conditions precedent are satisfied, TAMU's arguments would still fail. ...........31

    1. TAMU waived its right to assert that conditions precedent were not satisfied. .................................................................................................31

    2. TAMU confuses covenants for conditions precedent. ...............................34

    3. TAMU's position produces absurd results. ..............................................42

E. TAMU's assertion that the judiciary lacks jurisdiction because BE&K failed to provide notice is both legally and factually wrong. .............................................44

**CONCLUSION & PRAYER** ...............................................................................47

**CERTIFICATE OF SERVICE** ...........................................................................49

**CERTIFICATE OF COMPLIANCE** ...................................................................49

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 24R*,
324 S.W.3d 564 (Tex. 2010) ................................................................43

*A Status Constr., LLC v. City of Bellaire*,
No. 01-21-00326-CV, 2022 Tex. App. LEXIS 5149 (Tex. App.—
Houston [1st Dist.] July 26, 2022, no pet.) .....................................28, 29

*Avasthi & Assocs., Inc. v. Banik*,
343 S.W.3d 260 (Tex. App.—Houston [14th Dist.] 2011, pet.
denied) ................................................................................................43

*Bland Independent School District v. Blue*
34 S. W.3d 547, 554 (Tex. 2000) .........................................................30

*Brownlow v. State*,
251 S.W.3d 756 (Tex. App. 2008) .......................................................10

*Calpine Producer Servs., LP v. Wiser Oil Co.*,
169 S.W.3d 783 (Tex. App.—Dallas 2005, no pet.) .....................39, 40

*Clear Lake City Water Auth. v. Friendswood Dev. Co.*,
344 S.W.3d 514 (Tex. App.—Houston [14th Dist.] 2011, pet.
denied) ................................................................................................42

*Criswell v. Eur. Crossroads Shopping Ctr., Ltd.*,
792 S.W.2d 945 (Tex. 1990) .....................................................35, 37, 42

*FaulknerUSA, LP v. Alaron Supply Co.*,
322 S.W.3d 357 (Tex. App.—El Paso 2010, no pet.) ...................36, 39

*Garland Indep. Sch. Dist. v. Reeder Gen. Contrs., Inc.*,
No. 05-22-00855-CV, 2024 Tex. App. LEXIS 2046 (Tex. App.—
Dallas, Mar. 21, 2024, pet. denied) ...............................14, 26, 27, 29

*Granbury Marina Hotel, L.P. v. Berkel & Co. Contractors*,
473 S.W.3d 834 (Tex. App.—El Paso 2015, no pet.) .......................33

*Gulf Constr. Co. v. Self*,
676 S.W.2d 624 (Tex. App.—Corpus Christi 1984, writ ref'd
n.r.e.) ..............................................................................34, 35, 36, 38

*Henshaw v. Texas Nat. Resources Found.*,
216 S.W.2d 566 (Tex. 1949) .................................................................35

*Hill v. Thompson & Knight*,
756 S.W.2d 824 (Tex. App.—Dallas 1988, no writ)................................33

*Holcombe v. Reeves Cnty. Appraisal Dist.*,
310 S.W.3d 86 (Tex. App.—El Paso 2010, no pet.) .............................29

*James Constr. Grp., LLC v. Westlake Chem. Corp.*,
650 S.W.3d 392 (Tex. 2022) ............................................................45, 47

*Kirby Lake Dev., Ltd. v. Clear Lake City Water Authority*,
320 S.W.3d 829 (Tex. 2010) .............................................................25, 26

*Pepper Lawson Horizon Int'l Grp. LLC v. Tex. S. Univ.*,
669 S.W.3d 205 (Tex. 2023) .........................................................*passim*

*R.C. Small & Assocs. v. Southern Mech., Inc.*,
730 S.W.2d 100 (Tex. App.—Dallas 1987, no writ)................................36

*Reilly v. Rangers Mgmt., Inc.*,
727 S.W.2d 527 (Tex. 1987) .................................................................42

*Rise Above Steel Co., LLC. v. Liberty Mut. Ins. Co.*,
656 S.W.3d 577 (Tex. App.—El Paso 2022, no pet.) ...........................32

*Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Tr. I*,
331 S.W.3d 500 (Tex. App.—El Paso 2010, no pet.) ...........................33

*Rosetta Res. Operating, LP v. Martin*,
645 S.W.3d 212 (Tex. 2022) .................................................................42

*San Jacinto River Auth. v. City of Conroe*,
688 S.W.3d 124 (Tex. 2024) .................................................................45

*Sharifi v. Steen Auto., LLC*,
370 S.W.3d 126 (Tex. App.—Dallas 2012, no pet.) .............................33

*Sheldon L. Pollack Corp. v. Falcon Industries, Inc.*
794 S.W.2d 380, 383-84 (Tex. App.--Corpus Christi 199., writ
denied).................................................................................................36

*Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*,
327 S.W.3d 104 (Tex. 2010) .............................................34, 35, 40

*Tex. Dep't of Transp. v. Jones*,
8 S.W.3d 636 (Tex. 1999)...................................................................22

*Texas Dep't of Parks & Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004) ....................................................*passim*

*Texas S. Univ. v. Westwood Restoration, LLC*,
No. 15-24-00064-CV, 2025 WL 2078670 (Tex. App.—Austin
[15th Dist.] July 24, 2025, no pet.h.) (mem.op.) ...............29, 30, 44, 45

*Texas Utils. Elec. Co. v. Aetna Cas. & Sur. Co.*,
786 S.W.2d 792 (Tex. App.—Dallas 1990, writ denied) ...................46

*Thompson v. Six Shooter Enters., LLC*,
633 S.W.3d 107 (Tex. App.—El Paso 2021, no pet.) ........................47

*Wade & Sons, Inc. v. Am. Standard, Inc.*,
127 S.W.3d 814 (Tex. App.—San Antonio 2003, pet. denied).........32

*Young v. Netherlin*,
102 S.W.3d 415 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ...................43

*Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cnty.*,
449 S.W.3d 98 (Tex. 2014)........................................................*passim*

**Statutes and Rules**

Tex. Civ. Prac. & Rem. Code:
Ch. 114 ..........................................................................................*passim*
§ 75.002(c) ...........................................................................................22
§ 101.058 ..............................................................................................22
§ 114.001...........................................................................................12, 24
§ 114.002...........................................................................................12, 13
§ 114.003...........................................................................................*passim*
§ 114.004.......................................................................................11, 14, 24

§ 114.005.................................................................................................24

§ 114.006.................................................................................................24

Tex. Gov't Code:

§ 2260.001(4).........................................................................................46

§ 2260.051(b).........................................................................................45

§ 2260.052(a) .......................................................................................46

Tex. Loc. Gov't Code:

§ 271.151................................................................................................24

§ 271.152...........................................................................................24, 25

§ 271.153................................................................................................24

§ 271.154................................................................................................24

§ 271.155................................................................................................24

§ 271.156................................................................................................24

§ 271.157................................................................................................24

Tex. R. Civ. P. 54.............................................................................*passim*

## Other Authorities

Restatement (Second) of Contracts § 34 cmt. b (Am. Law Inst. 1981)...................43

Restatement (Second) of Contracts § 227cmt. d (Am. Law Inst. 1981)..................41

## IDENTITY OF PARTIES AND COUNSEL

**Appellant:** The Board of Regents of the Texas A&M University System

Appellee concurs with Appellant's Statement of Identity of Parties and Counsel

**Appellee:** BE&K Building Group, LLC

**Trial and Appellate Counsel for Appellee:**
Thomas O. Crist
Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, OH 44114
Phone:  (216) 363-4500
Facsimile:  (216) 636-4588
tcrist@beneschlaw.com

Frank A. Domino
MEHAFFYWEBER, PC
One Allen Center
500 Dallas, Suite 2800
Houston, Texas 77002
Phone: (713) 655-1200
Facsimile: (713) 655-0222
fdomino@mehaffyweber.com

# REFERENCE CITATION GUIDE

## The Parties

This Brief will refer to Appellant The Board of Regents of the Texas A&M University System as "Appellant" or "TAMU."

This Brief will refer to Appellee BE&K Building Group, LLC as "Appellee" or "BE&K."

## The Record on Appeal

This Brief will refer to the record as follows:

Clerk's Record as "CR [page #]"

Brief of Appellant as "Appellant's Br. at [page #]"

Reporter's Record as "RR [page #]."

## The Trial Court Motions

This Brief will refer to Appellant's Plea to the Jurisdiction, as "TAMU's PTJ."

# STATEMENT OF THE CASE

| | |
|---|---|
| **Nature of the Case** | This jurisdictional appeal arises from a construction dispute. TAMU hired BE&K to build the Applied Life Science Building on Tarlton State's campus. TAMU changed the scope of the project after it was underway and then refused to take responsibility for the resulting cost increases and time delays.  The parties' contract requires TAMU to pay the increased costs and extend the project deadline.  TAMU's refusals breached the contract.<br><br>BE&K sued.  TAMU filed a plea to the jurisdiction.  The trial court correctly denied the plea, under Chapter 114 of the Texas Civil Practice & Remedies Code.  That statute "waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of an express provision of" a construction contract with a state agency.  TAMU appealed. |
| **Trial Court** | Honorable John Brick;<br><br>272nd Judicial District Court of Brazos County, Texas |
| **Course of Proceedings** | The trial court held a hearing on TAMU's PTJ on March 21, 2025.  The trial court denied TAMU's PTJ on April 8, 2025. |
| **Trial Court Disposition** | By Order dated April 8, 2025, the trial court denied TAMU's PTJ.  CR 693. |

## STATEMENT REGARDING ORAL ARGUMENT

There is no need for this Court to hear oral argument. The facts and legal arguments are adequately presented in the briefs and the record of the trial court and dispositive issues have already been decided. Oral argument would not significantly aid this Court's decision.

# INTRODUCTION.

This is a case about jurisdiction. But TAMU confuses it as a case about conditions precedent. TAMU's contract defenses about whether conditions precedent were satisfied are merits issues for the trial court to address in due course. The only issue that the trial court has decided so far, and the only issue relevant on appeal, is whether the trial court has jurisdiction. The trial court correctly decided that it has jurisdiction. The Court should affirm

The only jurisdictional issue is whether Chapter 114 waives TAMU's sovereign immunity to suit. And the only questions under Chapter 114 are whether BE&K's Petition alleges that TAMU breached express provisions of a construction contract, and whether BE&K's claim put more than $250,000 in controversy. These are straightforward questions. The answers are also straightforward. Chapter 114 waived TAMU's sovereign immunity to suit, so the trial court has jurisdiction.

TAMU implores the Court to obfuscate this straightforward inquiry. It says that it had no duty to pay. It says that conditions precedent to payment weren't satisfied. It says that the Court should require BE&K to clear the summary-judgment standard in order to establish jurisdiction. It says that the Court should ignore the evidence that BE&K submitted. All of that is noise. The Court should ignore it and should focus on the only relevant question: Do BE&K's claims satisfy Chapter 114? They do. The Court should affirm.

1

# ISSUES PRESENTED

Appellee's Issue 1: Texas Civil Practice & Remedies Code Chapter 114's plain text waives the State's sovereign immunity for all suits against state agencies under covered construction contracts "for the purpose of adjudicating a claim for breach of an express provision of the contract." All agree that the BE&K/TAMU contract is a covered construction contract. BE&K sued for breach of express provisions of that contract. Does sovereign immunity insulate TAMU from suit?

Appellee's Issue 2: If jurisdictional and merits evidence do not intertwine, a plaintiff need not offer any merits evidence to establish jurisdiction. Chapter 114 divorces merits questions from jurisdictional questions, yet TAMU contends that its defenses to BE&K's breach-of-contract claim deprived the trial court of jurisdiction. Specifically, TAMU argues that it has no contractual obligation to pay, because conditions precedent to payment (none of which TAMU specifically denied in its pleadings) have not occurred. Do TAMU's defenses to the merits of BE&K's claim undermine jurisdiction?

Appellant's Issue 3: Recent authority from this Court establishes that notice provisions are not jurisdictional. TAMU contends that BE&K did not comply with a notice provision—a contention that BE&K disputes. Is TAMU's contention any obstacle to jurisdiction?

## STATEMENT OF FACTS

A. **Factual Background: BE&K contracted with TAMU to build a university building, and the project was plagued by impediments that TAMU caused.**

1. *TAMU hired BE&K to build on the Tarlton State campus.*

In August 2016, TAMU engaged BE&K to build the Applied Life Sciences Building on TAMU's Tarlton State campus. (CR 4, 7 (Pet'n) ¶¶ 1, 13.) The parties signed a Construction Manager At-Risk Agreement (the "CMAR Agreement"), which called for a project price of over $40 million and a target completion date of September 29, 2018 (later extended to October 4, 2018). (CR 7–8 (Pet'n) ¶¶ 14–15, 19.)

The CMAR Agreement provides for increases in the project price and extensions to the target completion date in various situations. For instance, Article 9.6.2.2 entitles BE&K to an equitable adjustment of the target completion date if the project encounters delays attributable to TAMU's errors or omissions, constructive changes, severe weather, or unanticipated conditions. (CR 9 (Pet'n) ¶ 23; CR 103–04 (CMAR Ag.) § 9.6.2.2.) Similarly, Article 11.3.1 allows BE&K to recover additional costs incurred during the project, including extended general conditions—i.e., fixed field-support costs associated with the project. (CR 9,11 (Pet'n) ¶¶ 24, 38; CR 113 (CMAR Ag.) § 11.3.1.) Additionally, the CMAR Agreement provides that TAMU was to begin releasing the portions that it retained from progress payments

3

(called "retainage") once 65% of the project was complete.  (CR 9 (Pet'n) ¶ 26; CR 109 (CMAR Ag.) § 10.3.2.2.)

   2. ***TAMU impeded progress on the project by expanding the project's scope, yet refusing to compensate BE&K for the additional work.***

Although BE&K completed all work under the CMAR Agreement, the project was plagued by problems occasioned by TAMU's adding to the project's scope as shown below. Nevertheless, TAMU refused to compensate BE&K for its additional work and refused to extend the target completion date.   BE&K provided the following examples of TAMU's changes to the scope of the project in its pleading.

**Storm System Redesign:**  TAMU revised the storm-system design after the project was under way, requiring BE&K to install hundreds of feet of additional underground storm line beneath the to-be-installed thermal lines.  (CR 10 (Pet'n) ¶¶ 36–37.)  TAMU approved a change order for that additional work calling for a 104-day extension to the target completion date. (CR 11 (Pet'n) ¶¶ 41-42.) TAMU's drawings for that redesign proved inaccurate; the tie-in point was not where the drawings represented, but instead in a place that precluded BE&K from safely completing the storm-line redesign.  (CR 12 (Pet'n) ¶¶ 44–46.)  Ultimately, that misadventure set the project back 159 days.  (*Id.* ¶ 47.)  Rather than increase the 104-day extension that the change order provided to cover those additional 55 days, TAMU chose to cancel the change order altogether.  (*Id.* ¶¶ 48–49.)  TAMU has

refused to pay BE&K for its increased costs from pursuing TAMU's requested change to the storm line, as well as to extend the target completion date. (CR 13 (Pet'n) ¶¶ 53–55.)

**Instruction to Accelerate:** TAMU also asked BE&K to accelerate its work on the project. (CR 13–14 (Pet'n) ¶ 56.) After BE&K offered proposals detailing the increased costs that would be incurred and the time that would be gained, TAMU directed BE&K to accelerate its work, and BE&K confirmed that it would do so. (CR 14 (Pet'n) ¶¶ 57–62.) BE&K noted that notwithstanding the acceleration, the work would not be 100% complete on the target completion date. (CR 15 (Pet'n) ¶ 64.) Although TAMU initially paid BE&K for its accelerated efforts, TAMU later unilaterally reversed those payments, deducting them from later payments. (CR 15 (Pet'n) ¶ 68.)

**Utility Support Grid:** After the parties signed the CMAR Agreement, TAMU altered the project drawings to add a utility-support grid. (CR 16 (Pet'n) ¶¶ 72–75.) That change extended the project's completion date until at least July 29, 2019, yet TAMU refused to pay BE&K for its additional work and refused to extend the project-completion date. (CR 16 (Pet'n) ¶¶ 76–79.)

**Roof System Redesign:** BE&K built the project consistent with the designs and specifications that TAMU's architect and engineer provided. (*See* CR 17 (Pet'n) ¶ 83.) Among other things, BE&K adhered to the oddly shaped "sawtooth" roof

5

design per TAMU's specifications. (CR 17 (Pet'n) ¶¶ 84–85.) The roofing inspector objected to that design, and BE&K submitted a change order outlining the work necessary to bring the roof into line with the inspector's requirements. (CR 17 (Pet'n) ¶¶ 87–88.) TAMU instructed BE&K to perform that work, but refused to execute the required change order. (CR 18 (Pet'n) ¶¶ 89–91.)

Regardless of these setbacks, BE&K completed the project. (CR 589 ¶ 10).

Both before and after it completed its work on the project, BE&K sought to resolve these disputes with TAMU, to no avail. (*E.g.*, CR 302 (8/2/2019 TAMU Ltr. recounting parties' negotiations); CR 592 (12/19/2022 Crist Ltr. to Judge Brick advising him of parties' negotiations).)

**B.    Procedural Background:    BE&K sued for breach of express provisions of the CMAR Agreement, TAMU contested jurisdiction, and the trial court rejected TAMU′s plea to the jurisdiction.**

As a result of TAMU's repeated refusals to pay BE&K for additional work that TAMU itself had demanded, BE&K sued. BE&K's Petition and Jury Demand, filed September 1, 2019, asserted claims for TAMU's breaching the CMAR Agreement's express provisions requiring equitable adjustments to the contract timeline and price and requiring release of retainage. (CR 4–20 (Pet'n).)

BE&K's Petition identified the express provisions of the CMAR Agreement at issue (CR 9–18 (Pet'n)) and explained in detail how TAMU had breached them by failing to pay BE&K for additional work and by failing to equitably extend the

6

completion date (CR 9–18 (Pet'n)).  Additionally, BE&K identified the specific sums at issue, which total $3,511,583.64.  (CR 5, 13, 16, 17, 19 (Pet'n) ¶¶ 4, 55, 71, 81, 100.)

While its pleadings never specifically denied the occurrence of any conditions precedent to BE&K's recovery, TAMU contested jurisdiction.  It contended that BE&K could not "establish that it complied with the contract's final payment provisions," and based upon that contention, TAMU said that the state had not waived its sovereign immunity.  (CR 288 ("Until Plaintiff can establish that it complied with the contract's final payment provisions, there are no jurisdictional facts supporting a waiver of sovereign immunity for breach of contract for failing to pay.")  In other words, TAMU's position was that the court lacked jurisdiction unless BE&K could disprove TAMU's contract defenses by "establishing" that it complied with various contractual conditions.

The trial court held a hearing on TAMU's plea to the jurisdiction on March 21, 2025.  (RR 1.)  At the hearing, TAMU's jurisdictional theory remained unchanged—it contended that BE&K had not satisfied contractual conditions, so TAMU had no duty to pay, so BE&K could not establish a breach, and so BE&K could not establish a waiver of TAMU's sovereign immunity, and therefore the court lacked jurisdiction.  (*See* RR 8:12-15.)  The trial court rejected TAMU's arguments on April 9, 2025.  (CR 693 (Order).)

## SUMMARY OF ARGUMENT

The trial court correctly concluded that Chapter 114 of the Texas Civil Practice and Remedies Code waived TAMU's sovereign immunity from suit, so the trial court has jurisdiction to adjudicate BE&K's claims. Both Chapter 114's plain text and binding Texas Supreme Court precedent compel this conclusion.

Chapter 114 expressly waives sovereign immunity from suit for covered claims under a covered contract. BE&K pursues covered claims because it sues TAMU for breaching the CMAR Agreement's express provisions and seeks over $250,000. The CMAR Agreement is a covered contract because it is a contract for construction services that a state agency was authorized to enter. And BE&K seeks relief that Chapter 114 permits. BE&K satisfies all of Chapter 114's elements for a sovereign-immunity waiver and thus satisfies all jurisdictional prerequisites.

Recent Supreme Court precedent confirms that the trial court has jurisdiction to adjudicate BE&K's claims. The Court held in *Pepper Lawson Horizon International Group LLC v. Texas Southern University*, 669 S.W.3d 205 (Tex. 2023), that a state agency cannot evade Chapter 114's "clear and ambiguous waiver" by raising merits defenses to the plaintiff's contract claim. Whether the plaintiff can ultimately prevail is a merits question that does not affect the jurisdictional inquiry.

To contest jurisdiction, TAMU relies on arguments about the merits, not about jurisdiction. It asserts that BE&K's claims will ultimately fail because BE&K failed

8

to satisfy conditions precedent to TAMU's obligation to pay. Both Chapter 114 and *Pepper Lawson* require the Court to reject TAMU's attempt to convert its merits defenses into a jurisdictional prerequisite. And the authority on which TAMU primarily relies (*Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004)) does not authorize a wide-ranging inquiry into the merits, because the merits and jurisdictional questions necessarily intertwined under the immunity-waiver statute at issue there. That is not the case under Chapter 114, as authorities interpreting analogous immunity-waiver statutes confirm.

Even if a merits inquiry were appropriate, TAMU's argument would fail. TAMU waived its right to contest that conditions precedent were satisfied by failing to specifically deny them in its Answer, as Texas Rule of Civil Procedure 54 requires. And in any event, the "conditions precedent" that TAMU relies on are actually covenants because they are construction-contract provisions relating to the timing of payment.

Recent authority from this Court confirms that TAMU's contention that BE&K failed to adequately provide pre-suit notice imposes no jurisdictional hurdle.

Ultimately, TAMU's position is inequitable and illogical. TAMU believes that it has sole authority to determine when a payment demand is ripe, and thus whether it has any obligation to pay. And TAMU says that until it decides that it has such an obligation, it can unilaterally deprive the Texas judiciary of jurisdiction

9

to tell TAMU otherwise. Both law and logic compel the Court to reject this breathtakingly broad and misguided position.

## ARGUMENT

## STANDARD OF REVIEW

The Court reviews *de novo* a trial court's denial of a plea to the jurisdiction. TAMU's PTJ presented a question of law subject to *de novo* review—whether Chapter 114 waived TAMU's sovereign immunity from BE&K's suit. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

A defendant can challenge jurisdiction through a plea to the jurisdiction either on the pleadings, or on the facts. *Id.* at 226–27. The question in a pleading challenge is whether the pleadings, construed liberally in the plaintiff's favor, contain sufficient facts to demonstrate the court's jurisdiction. *Id.* When a defendant disputes whether jurisdictional facts exist, courts review the relevant evidence "to determine if a fact issue exists," applying the summary-judgment standard. *Id.* at 227–28. When a court considers a factual challenge to jurisdiction, it must confine itself to "the evidence relevant to those jurisdictional issues." *Brownlow v. State*, 251 S.W.3d 756, 759 (Tex. App. 2008).

Whether a particular factual dispute presents an issue of subject-matter jurisdiction (that is, a true dispute over *jurisdictional* facts) or a merits dispute is a question of law. *See Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cnty.*,

10

449 S.W.3d 98, 107 (Tex. 2014) (statutory text determines scope of immunity waiver, and thus jurisdiction).

## A. The trial court correctly concluded that it had jurisdiction because Chapter 114 waived TAMU's sovereign immunity.

TAMU's PTJ contended that because it is a state agency, its sovereign immunity deprived the trial court of jurisdiction to adjudicate BE&K's breach-of-contract claims. The trial court correctly rejected TAMU's PTJ and concluded that it has jurisdiction over BE&K's claims.

### 1. Chapter 114 waives state agencies' sovereign immunity for construction-contract claims.

In 2013, the 83rd Legislature passed Chapter 114 of the Texas Civil Practice and Remedies Code. Captioned "Adjudication of Claims Arising under Written Contracts with State Agencies," Chapter 114 expressly waives state agencies' sovereign immunity from suit for breaches of covered contracts:

> A state agency that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this chapter *waives sovereign immunity to suit for* the purpose of adjudicating *a claim for breach of an express provision of the contract*, subject to the terms and conditions of this chapter.

TEX. CIV. PRAC. & REM. CODE § 114.003 (emphasis added).

Additionally, Chapter 114 identifies what types of monetary relief a plaintiff can obtain for a state agency's breach of a construction contract. *See id.* § 114.004.

11

To determine that immunity waiver's breadth, courts focus on the statutory text. *See Zachry Constr.*, 449 S.W.3d at 107 (holding that statutory text may define scope of waiver). Thus, the elements to establish a state agency's sovereign-immunity waiver under Chapter 114 are: (1) a covered contract, and (2) a covered claim for breach of an express provision of that contract. So long as both elements are satisfied, the state agency "waives sovereign immunity to suit," and the trial court has jurisdiction to "adjudicate[e the] claim for breach of an express provision of the contract." TEX. CIV. PRAC. & REM. CODE § 114.003.

### 2. BE&K satisfied both elements of Chapter 114's immunity waiver.

Here, BE&K's petition easily satisfied Chapter 114's elements for the immunity waiver.

**Covered Contract:** Section 114.001(2) defines which contracts are "subject to this subchapter," and thus to the immunity waiver. Specifically, covered contracts are "agreement[s] for providing goods or services to [a] state agency that [are] properly executed [by] the state agency." *Id.* § 114.001(2). Additionally, § 114.002 states that Chapter 114 "applies only to" written contracts "for engineering, architectural, or construction services." Thus, construction contracts with state agencies are covered contracts.

The CMAR Agreement is a covered contract. TAMU is a state agency. The contract is for construction services. And TAMU properly executed the CMAR

12

Agreement.  TAMU disputes none of this.  These jurisdictional facts satisfy the first element for Chapter 114's sovereign-immunity waiver.

**Covered Claim:**  As noted above, § 114.003 states that state agencies waive sovereign immunity for any "claim for breach of an express provision of the contract."  Section 114.002 adds one more requirement:  The claim must put at least $250,000 in controversy, excluding statutory penalties, interest, and fees.  *See id.* § 114.002.  Thus, a claim that the state agency breached an express provision of the contract, seeking at least $250,000 in damages, is a covered contract.

BE&K's original Petition easily meets the covered-claim element.  It seeks over $3.5 million in damages—well over the $250,000 threshold.  (CR 19 (Pet'n ¶ 100).)  And no one can reasonably dispute that BE&K's Petition seeks recovery for breach of express provisions of the CMAR Agreement.  Paragraphs 23 through 26 of BE&K's Petition identify various contractual requirements, including CMAR Articles 9.6.2.2, 10.3.2, 10.3.2.2, and 11.3.1.  (CR 9 (Pet'n ¶¶ 23–26).)  And subsequent paragraphs explain in detail how TAMU breached its obligations to compensate BE&K for and to extend deadlines resulting from TAMU-caused delays, change orders, unforeseen conditions, and errors and omissions in designs, plans, and specifications.  (CR 6–18 (Pet'n).)

Additionally, BE&K's Petition seeks permissible relief.  Courts have recognized that immunity-waiver statutes' damage limitations can define the

13

contours of the immunity waiver. *Zachry Constr.*, 449 S.W.3d at 107 ("Whether the various provisions of the Act define the scope of the waiver of immunity depends on the statutory text."). Section 114.004 defines the relief that a plaintiff may seek. That relief includes the "balance due and owed …, including any amount owed as compensation for increased cost to perform the work" due to "owner-caused delays or acceleration"; amounts owed for change orders; attorneys' fees; and interest. TEX. CIV. PRAC. & REM. CODE § 114.004. BE&K tethers its prayer for relief to that section, stating that it seeks "all amounts recoverable under Section 114.004 of the Texas Civil Practice and Remedies Code." (CR 19 (Pet'n).) Under black-letter law, TAMU has therefore waived its immunity to all relief that BE&K seeks.

In short, Chapter 114 defines the elements and the scope of TAMU's sovereign-immunity waiver. Chapter 114 thus specifies which facts are relevant to jurisdiction—facts relevant to those elements. Facts are not *jurisdictional* facts if they do not pertain to whether BE&K alleged a breach of an express provision of a covered contract or whether BE&K seeks relief that Chapter 114 authorizes. *Cf.*, *Garland Indep. Sch. Dist. v. Reeder Gen. Contrs., Inc.*, No. 05-22-00855-CV, 2024 Tex. App. LEXIS 2046, at *4 (Tex. App.—Dallas, Mar. 21, 2024, pet. denied) (rejecting argument that merits defenses addressed jurisdictional facts under analogous Local Government Contract Claims Act). Thus, facts pertaining to

14

whether BE&K can *prove* its claims or that it is ultimately entitled to relief are not jurisdictional facts. *Id.* They are merits facts.

BE&K's Petition satisfies Chapter 114's elements by pursuing "claims for breach of an express provision" of a covered contract, and by seeking relief within Chapter 114's bounds. TAMU has waived its sovereign immunity, and the trial court had jurisdiction.

**B.    *Pepper Lawson* confirms that TAMU waived sovereign immunity and that the Texas judiciary has jurisdiction to adjudicate BE&K's claims for breach of express provisions of the CMAR Agreement.**

Chapter 114's plain text and the paragraphs of BE&K's Petition satisfying Chapter 114's elements extinguish any questions regarding the trial court's jurisdiction. But if any doubts could remain, the Texas Supreme Court put them to rest with its recent opinion in *Pepper Lawson Horizon International Group, LLC v. Texas Southern University*, 669 S.W.3d 205 (Tex. 2023).

*Pepper Lawson* featured facts eerily similar to the facts here. A state university contracted with PLH to construct a university building, the project ran into unforeseen problems that caused delays and cost overruns, and the university refused to pay the amounts owed. *Id.* at 207. PLH sued, asserting that the university failed to grant required extensions, that the university could not thwart PLH's claims by invoking the contract's liquidated-damages provision, and that the court should equitably adjust the contract's completion date and price. *Id.* at 207–08.

15

The university's response was also eerily similar to TAMU's here. "Despite Chapter 114's clear and unambiguous waiver of immunity for construction-contract suits," the university contested the trial court's jurisdiction. *Id.* at 209. In support, the university argued that PLH had failed to show a breach of an express contractual provision, and that PLH's claims for delay were moot because the parties had executed change orders. *Id.* at 209–10. The trial court rejected the university's arguments and concluded that the university had waived its sovereign immunity, but the First Court of Appeals in Houston reversed. To do so, the appellate court parsed the contract and concluded that "no express contract provision required [the university] to perform as PLH alleged"—that is, to pay PLH. *Id.* at 210. It also held that the university was immune from claims for interest and attorneys' fees. *Id.*

The Supreme Court reversed. It noted that § 114.003 "clearly and unambiguously waives immunity from suit for breach-of-contract claims" against state universities, as long as the claim is for breach of an express provision of that contract and the plaintiff seeks damages recoverable under the statute. *Id.* at 210–11. In other words, those are the only jurisdictional facts—whether the claim is for breach of an express provision of a covered contract, and whether the claim seeks covered damages.

The Court's analysis conveyed as much. To resolve the jurisdictional question, the only issue was "whether PLH's breach-of-contract *allegations* and

16

damages *claims* fall within the scope of the express statutory waiver." *Id.* at 211 (emphases added).  PLH satisfied Chapter 114's jurisdictional test by pleading a written contract for construction services alleging that the university failed to timely pay the amounts owed, that the university failed to equitably adjust the contract's timeline and price, and identifying the specific contract provisions breached.  *Id.*

Just as central to the Court's analysis was the position that it rejected.  It critiqued the court of appeals' analysis "conflat[ing] statutory-construction rules with contract interpretation" and thus entertaining the university's "host of contract defenses pertaining to the merits of PLH's claims." *Id.*  By indulging the university's merits-focused arguments, the court of appeals mistakenly "required PLH to prove its case" in order to establish jurisdiction. *Id.*  The Texas Supreme Court corrected that error.

## C. The Court should reject TAMU's attempts to evade *Pepper Lawson*'s plain holding.

After the Supreme Court issued *Pepper Lawson* in 2023, TAMU should have withdrawn its PTJ and proceeded to litigate on the merits.  Inexplicably, TAMU persisted in contending that Chapter 114 does not waive sovereign immunity.  And after the trial court properly rejected TAMU's argument, TAMU now begs this Court to flout the Supreme Court's holding in *Pepper Lawson*.

The Court should reject TAMU's invitation.  TAMU argues merits defenses centering on whether conditions precedent were satisfied, and miscasts these

17

defenses as addressing "jurisdictional facts." (Appellant's Br. at 19.) According to TAMU, BE&K cannot establish a sovereign-immunity waiver under Chapter 114 until it "show[s]" that TAMU breached a contract. (*Id.* at 14.) And TAMU further contends that BE&K cannot show a breach because BE&K cannot show that it satisfied "multiple conditions precedent to payment," and thus TAMU "had no duty to pay" and "no duty means no breach." (*Id.* at 19.) That is a quintessential merits defense.

TAMU is wrong on the merits, but that is for a later date. The relevant point now is that TAMU is wrong that its merits-focused contract defenses address any jurisdictional facts. Instead, whether BE&K satisfied conditions precedent is irrelevant to jurisdiction.

### 1. *Whether conditions precedent were satisfied is not a jurisdictional fact, as* **Pepper Lawson** *recognizes.*

The crux of TAMU's brief is its wrongheaded assertion that facts concerning whether conditions precedent were satisfied are "jurisdictional facts." They are not.

As discussed above, Chapter 114 defines the elements required to establish a waiver of sovereign immunity, and those elements define the jurisdictional facts relevant to TAMU's sovereign-immunity waiver. Chapter 114's plain text states that the only jurisdictional facts relevant to a state agency's sovereign-immunity waiver are (a) whether the plaintiff pursues a claim seeking at least $250,000 in damages for breach of an express provision of (b) a covered contract.

18

Facts relevant to contract defenses, including alleged failures of conditions precedent, are not jurisdictional facts. *See Pepper Lawson*, 669 S.W.3d at 211 (holding that change orders attached to plea to jurisdiction did not affect Chapter 114's jurisdictional analysis). Notably, Chapter 114 says nothing about conditions precedent—or about any other defense to a breach-of-contract claim for that matter. However, to state the obvious, Chapter 114 does state that it waived state agencies' liability from suit. TEX. CIV. PRAC. & REM. CODE § 114.003. And it did so not for established breaches of contract, but instead for any "*claims* for breach" of a contract's express provisions that a plaintiff calls upon Texas courts to "adjudicat[e]." The statute's plain text shows as much:

> A state agency that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this chapter waives sovereign **immunity to suit** for the purpose of **adjudicating a claim for breach** of an express provision of the contract, subject to the terms and conditions of this chapter.

TEX. CIV. PRAC. & REM. CODE § 114.003 (emphases added).

In light of that plain text, it is no surprise that the Texas Supreme Court rejected the cart-before-the-horse approach to establishing jurisdiction that TAMU advocates here. *Pepper Lawson* held that the contractor satisfied Chapter 114, and thus established jurisdiction, by alleging (1) a written contract for construction services, (2) a failure to timely pay what was owed, (3) a failure to comply with the contractual requirements to equitably adjust deadlines and price, and (4) the specific

19

contract provisions at issue. 669 S.W.3d at 211. And although the university argued that "a host of contract defenses pertaining to the merits of [the contractor's] claims" thwarted jurisdiction because the contractor "could not prevail on its claims," the Court rejected that argument—the precise argument that TAMU implores the Court to indulge. *Id.*

### 2. *TAMU's attempts to distinguish* Pepper Lawson *flounder.*

Evidently recognizing that *Pepper Lawson* is the death knell of its objection to jurisdiction, TAMU urges the Court to ignore that binding precedent. But *Pepper Lawson* is materially indistinguishable from this case.

TAMU begs the Court to wade through pages of convoluted arguments about irrelevant evidence, contending that all of that evidence somehow justifies side-stepping *Pepper Lawson*. (Appellant's Br. 19–26, 35–36.) Specifically, TAMU asserts that *Pepper Lawson* addressed a facial, only-on-the-pleadings challenge to jurisdiction, while this case presents an evidentiary challenge. (*Id.* at 34–35.) Not so. The Supreme Court notes in *Pepper Lawson* that the university attached evidence to its plea to the jurisdiction—specifically, a contract and change orders. *Id.* at 209–10, 211 ("To support the plea, TSU attached the contract and change orders"). TSU additionally argued that the evidence, in particular signed change

orders, were fatal to PLH's claims. *Id.* at 209 (n.4). Thus, TAMU's factual-versus-facial distinction fails.[1]

That failure is important here. While the university in *Pepper Lawson*, like TAMU here, offered beyond-the-pleadings evidence in support of its plea to the jurisdiction, the Texas Supreme Court recognized that the evidence was irrelevant to the jurisdictional inquiry, because "PLH's burden was to allege facts affirmatively demonstrating the court's jurisdiction to hear the cause, and it did." *Id.* at 211. That analysis drew a clear line between jurisdictional facts and merits facts.

Nor can TAMU distinguish *Pepper Lawson* by relying on authorities addressing different immunity-waiver statutes. TAMU contends that *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (2004), justifies TAMU's wide-ranging merits arguments masquerading as jurisdictional challenges. (Appellant's Br. at 15–17, 24–25.) But that is not the case.

*Miranda* addressed a materially distinguishable immunity-waiver statute, the Texas Tort Claims Act. While § 114.003 defines a straightforward "waive[r of] sovereign immunity to suit," the Texas Tort Claims Act "creates a unique statutory scheme in which" immunity from liability and immunity from suit "are co-

___

[1] Even if TAMU's factual-versus-facial distinction had any merit (it does not), as shown below, the purported "conditions" are covenants. But regardless, BE&K presented evidence creating a fact question, thereby mandating that the trial court deny TAMU's jurisdictional plea. (CR 588–90 (Read Ballew Affidavit).)

extensive." *Id.* at 224. The *Miranda* Court recognized that immunity from liability and immunity from suit are separate concepts—immunity from liability is an affirmative defense that does not affect jurisdiction, "while immunity from suit deprives a court of subject matter jurisdiction." *Id.* at 224 (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). And typically, they apply separately. But the Tort Claims Act's unique scheme incorporates into the scope of the liability waiver the recreational-use statute's limitations of liability. *Id.* at 225 (quoting TEX. CIV. PRAC. & REM. CODE §§ 75.002(c) & 101.058).

The *Miranda* Court held that that "unusual confluence of standards" merged the immunity question with the merits: "a governmental unit waives sovereign immunity under the recreational use statute and the Tort Claims Act only if it *is grossly negligent.*" *Id.* at 221, 225 (emphasis added). Because that statutory scheme intertwined the jurisdictional and merits inquiries, the Court had to consider a merits question (whether the state *had been* grossly negligent) to resolve the jurisdictional dispute. Pleading gross negligence did not suffice.

But unlike the Texas Tort Claims Act, Chapter 114 does not intertwine the jurisdictional and merits questions. Instead, Chapter 114 expressly waives immunity "for the purpose of adjudicating *a claim*" covered by the statute. TEX. CIV. PRAC. & REM. CODE § 114.003 (emphasis added). The legislature thus waived the state's immunity from suit so that courts could adjudicate disputes on the merits. *Id.* As a

22

consequence, merits questions and jurisdictional questions do not intertwine here, as they did in *Miranda*. So invoking Chapter 114's waiver imposes no evidentiary burden at all.

The Court should likewise reject TAMU's attempt to contort *Pepper Lawson* by suggesting that it authorizes a merits inquiry. TAMU hangs its hat on a passage in *Pepper Lawson* noting that "[t]o the extent the jurisdictional inquiry implicated the merits of PLH's cause of action," the university failed to negate PLH's claims. *Id.* at 211–12. And based on that passage, TAMU suggests that Chapter 114's jurisdictional inquiry dovetails with merits inquiries. (*E.g.*, Appellant's Br. at 18 (contending, wrongly, that TSU's burden in *Pepper Lawson* was "to 'conclusively establish' that 'it did not breach'" the contract and that "'PLH did not follow the procedures triggering TSU's obligation to pay'").) But here, the jurisdictional inquiry does not implicate the merits at all. TAMU's contending otherwise—even repeatedly, and even by taking a snippet of *Pepper Lawson* out of context—cannot change that fact.

> ### 3. *Authorities applying other immunity statutes, like* **Pepper Lawson***, reject attempts like TAMU's here to convert merits questions into jurisdictional questions.*

The Texas Tort Claims Act—and thus *Miranda*—offer an at-best-inapt analogy here. The Local Government Contract Claims Act ("LGCCA") presents a

better analogy. And cases applying that Act draw a firm boundary between jurisdictional facts and merits facts.

> a) The Local Government Contract Claims Act and Chapter 114 run parallel.

The LGCCA served as a template for Chapter 114. The 79th legislature passed the LGCCA in 2005. Just eight years later, the 83rd legislature passed Chapter 114, which largely follows the LGCCA's structure, as the headings of the following subsections reflect:

| Tex. Civ. Prac. & Rem. Code, Ch. 114 | LGCCA (Local Gov't Code § 271.151 to § 271.157) |
|---|---|
| § 114.001. Definitions | § 271.151. Definitions |
| § 114.003. Waiver of Immunity to Suit for Certain Claims | § 271.152. Waiver of Immunity to Suit for Certain Claims |
| § 114.004. Limitations on Adjudication Awards | § 271.153. Limitations on Adjudication Awards |
| § 114.005. Contractual Adjudication Procedures Enforceable | § 271.154. Contractual Adjudication Procedures Enforceable |
| § 114.006. No Waiver of Other Defenses | § 271.155. No Waiver of Other Defenses |
| § 114.007. No Waiver of Immunity to Suit in Federal Court | § 271.156. No Waiver of Immunity to Suit in Federal Court |
| § 114.008. No Waiver of Immunity to Suit for Tort Liability | § 271.157. No Waiver of Immunity to Suit for Tort Liability |

24

Beyond statutory headings, the text of the two statutes' immunity-waiver provisions also run parallel. Like Chapter 114, the LGCCA provides for a broad immunity from suit for any covered claim. The only differences between those provisions appear in red text below:

| Immunity-Waiver Provisions | |
| --- | --- |
| **§ 114.003. Waiver of Immunity to Suit for Certain Claims** | **§ 271.152. Waiver of Immunity to Suit for Certain Claims** |
| A state agency that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this chapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of an express provision of the contract, subject to the terms and conditions of this chapter. | A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter. |

> b) LGCCA authorities reject attempts to conflate jurisdictional facts with merits facts.

Courts applying the LGCCA recognize the distinction between jurisdictional facts and merits facts, and reject attempts like TAMU's here to require plaintiffs to prove their claims on the merits in order to establish jurisdiction. In *Kirby Lake Development, Ltd. v. Clear Lake City Water Authority*, 320 S.W.3d 829 (Tex. 2010) the Texas Supreme Court rejected the notion that local governments waive sovereign only for contracts upon which they are ultimately liable. As a later opinion summarized *Kirby Lake Development*'s analysis, "[t]he water authority argued …

[that] *because* there was no liability, there [was] … no waiver of immunity." *Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cnty.*, 449 S.W.3d 98, 109 (Tex. 2014) (citing *Kirby Lake Development, Ltd. v. Clear Lake City Water Authority*, 320 S.W.3d 829, 839-40 (Tex. 2010)). That is essentially the same argument that TAMU offers here. (Appellant's Br. at 19 ("no duty to pay … means no breach").) The Supreme Court rejected that argument because "the premise—no liability—was disputed" and the purpose of the LGCCA is to allow courts to adjudicate liability on a contract, "not to foreclose the determination of whether liability exists.'" *Zachry Constr.*, 449 S.W.3d at 109 (quoting *Kirby Lake Development*, 320 S.W.3d at 840).

The Supreme Court echoed that conclusion in *Zachry Construction*. The Court held that the LGCCA "waives immunity for contract claims that meet certain conditions: the existence of a specific type of contract, a demand for certain kinds of damages, a state forum, etc." *Id.* at 109. Recognizing that "[t]he waiver does not depend on the outcome," *id.*, the Court rejected the local-government defendant's argument—TAMU's argument here (Appellant's Br. at 19)—that its immunity remained intact because the contract did not expressly require payment, *id.* at 111.

Texas Courts of Appeals agree. In *Garland Independent School District v. Reeder General Contractors, Inc.*, the contractor raised arguments identical to TAMU's here—that the immunity waiver did not apply because the contractor-plaintiff "could not establish the element of breach" and "failed to comply with the

26

contract's 'claims' process for resolving disputes." No. 05-22-00855-CV, 2024 Tex. App. LEXIS 2046, at *4 (Tex. App.—Dallas Mar. 21, 2024, pet. denied). The Fifth Court of Appeals rejected those arguments. It concluded that the contractor-plaintiff met its jurisdictional burden by alleging that the defendant "entered into a contract subject to the act and breached the contract … by failing to pay … all sums due and owing" as well as "by providing defective plans and generally causing delays while wrongfully holding [the contractor] liable for damages resulting from the delays." *Id.* at *19–*20. Those allegations amounted to "a substantial claim meeting the [LGCCA's] conditions" and thus sufficed to invoke the statute's immunity waiver. *Id.* Those allegations also mirror BE&K's allegations here. *See supra* Pt. A.2.

Importantly, the *Garland* court "reject[ed] the District's argument that Reeder failed to allege a substantial claim because it … failed to provide evidence of a breach." *Id.* at *21.[2] The court held that the defendant's no-evidence-of-breach "arguments go to the District's liability and do not address whether immunity has been waived." *Id.* at *24.

---

[2] TAMU's brief does not address the "substantial claim" standard. BE&K easily meets that standard here. *See Zachry Constr.*, 449 S.W.3d at 110 (stating that "substantial claim" standard requires only "that the claimant must plead facts with some evidentiary support that constitute a claim for which immunity is waived, not that the claimant will prevail"); CR 588–90 (Read Ballew Affidavit; meeting that standard.) TAMU's quibbles with that evidence (Appellant's Br. at 20–22) are no barrier to BE&K's satisfying the substantial-claim standard.

Similarly, the First Court of Appeals in Houston rejected a different public defendant's attempt to convert merits questions into jurisdictional questions in *A Status Construction, LLC v. City of Bellaire*, No. 01-21-00326-CV, 2022 Tex. App. LEXIS 5149, at *1 (Tex. App.—Houston [1st Dist.] July 26, 2022, no pet.). There, the court held that the contractor-plaintiff "pleaded a substantial claim" and thus invoked the LGCCA's immunity waiver—and thus the court's jurisdiction—by alleging "that the City entered into a contract subject to the act and breached that contract" and seeking "damages that are recoverable" under the Act. *Id.* at *10–*11. The City of Bellaire argued the court lacked jurisdiction because the damages sought were not recoverable under the contract. *Id.* at *13. The court of appeals rejected that argument because it "speaks to the [City's] ultimate liability under the contract and does not address whether immunity has been waived. The Act's waiver of immunity is not dependent on ultimate liability." *Id.*

These authorities show that the LGCCA's immunity waiver, which is materially indistinguishable from Chapter 114's, does not intertwine merits questions and jurisdictional questions. *E.g.*, *Zachry Constr.*, 449 S.W.3d at 109 ("immunity from suit … may be waived for a claim on which a governmental entity is not liable"). Thus, merits-focused defenses, including contentions that a plaintiff cannot establish a breach, are no obstacle to jurisdiction. Just as the public entities' contract defenses posed no barriers to jurisdiction in *Kirby Lake Development*,

28

*Zachry Construction*, *Reeder*, and *A Status*, TAMU's arguments about conditions precedent and evidence supporting them are irrelevant to the jurisdictional question here. So are TAMU's arguments about whether it can lawfully remit payment (Appellant's Br. at 39–44)—arguments that TAMU neglected to raise below and has thus abandoned. *E.g.*, *Holcombe v. Reeves Cnty. Appraisal Dist.*, 310 S.W.3d 86, 90 (Tex. App.—El Paso 2010, no pet.) ("It is well settled that a party will not be permitted to take a position on appeal that is not presented in the trial court"). Thus, even if those arguments were relevant at the jurisdictional stage (and they are not), the Court ought not consider them here.

What is more, TAMU cannot sidestep the LGCCA and the authorities interpreting it. While TAMU contends that local-government immunity and state-agency immunity "are different" (Appellant's Br. at 32), TAMU never engages with the LGCCA's text or structure (*see id.* at 31–33). And the only difference between the statutes—Chapter 114's requirement that a plaintiff plead a claim for breach of an *express provision* of the contract—offers no reason to believe that Chapter 114 injects merits questions into the jurisdictional test.

Recent authority from this Court confirms that § 114.003's "express provision" requirement is not an invitation to consider merits evidence at the jurisdictional stage. In *Texas Southern University v. Westwood Restoration, LLC*, the Court not only offered no reason to believe that § 114.003 invites parties to

29

submit merits evidence, it also held that a plaintiff's petition can invoke Chapter 114's immunity waiver without specifying the "express provision" at issue. No. 15-24-00064-CV, 2025 WL 2078670 at \*2 (Tex. App.—Austin [15th Dist.] July 24, 2025, no pet. h.) (mem. op.).

c) Courts applying other immunity statutes reject attempts to conflate jurisdictional questions and merits questions.

Courts addressing different immunity statutes are in accord. For instance, in *Bland Independent School District v. Blue*, the Supreme Court held that a plea to the jurisdiction "should be decided without delving into the merits of the case" because "the purpose of a dilatory plea" like a plea to the jurisdiction "is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached." 34 S.W.3d 547, 554 (Tex. 2000) (cited with approval in *Pepper Lawson*). Thus, a jurisdictional challenge "does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction." *Id.*

\* \* \* \*

In sum, the plain text of Chapter 114, binding authority from the Texas Supreme Court, recent authority from this Court, and at least four cases applying a materially indistinguishable immunity-waiver statute all confirm that merits inquiries have no place in analyzing TAMU's PTJ. Yet that is all that TAMU has to offer. TAMU's quibbles about whether conditions precedent were satisfied are

30

irrelevant to the jurisdictional issue that TAMU's appeal presents.  The Court need not consider them.

**D.     Even if Chapter 114 and *Pepper Lawson* permitted inquiring into whether conditions precedent are satisfied, TAMU′s arguments would still fail.**

As detailed above, the Court ought not delve into the merits-focused contract defenses that TAMU dresses up as jurisdictional arguments.  But even if the Court were to consider TAMU's arguments, they would still fail.  Texas courts have jurisdiction over BE&K's claims.

### 1.     *TAMU waived its right to assert that conditions precedent were not satisfied.*

Even if satisfaction of conditions precedent were relevant to jurisdiction, TAMU's challenge would still fail because TAMU waived its right to challenge satisfaction of conditions precedent by failing to specifically deny in its live pleading that any of the so-called conditions precedent at issue were satisfied.

Texas Rule of Civil Procedure 54 governs pleading conditions precedent.  It states that "it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred" TEX. R. CIV. P. 54.  That is what BE&K did here. (CR 19 (Pet'n) ¶¶ 99, 101.)  Under Rule 54, therefore, once the case reaches the merits stage, BE&K needs to prove only those that "are *specifically denied* by the opposite party."  TEX. R. CIV. P. 54 (emphasis added).

31

Texas courts hold that a defendant does not "specifically den[y]" that conditions precedent have been satisfied when it does what TAMU did here—*generally* denying that all conditions precedent have been satisfied. (CR 280 (Ans.) ¶ 7 ("Plaintiff is barred from recovering because all of the conditions precedent for Plaintiff to recover have not been performed or occurred.").) To meet Rule 54's requirement of a "specific" denial, a defendant must identify the precise conditions precedent that it contends were not satisfied.

By failing to specifically deny conditions precedent in its Answer, TAMU waived the right to contest them through its plea to the jurisdiction. *Wade & Sons, Inc. v. American Standard, Inc.*, 127 S.W.3d 814 (Tex. App.—San Antonio 2003, pet. denied), shows as much. There, the contractor defendant's answer "specifically den[ied] that all conditions precedent" under a bond had been satisfied. *Id.* at 825–26. The court of appeals held that the denial was "not sufficient" because, under Rule 54, a "defendant cannot generally deny that the plaintiff has not proved all conditions precedent, but must specifically deny which conditions precedent have not been met." *Id.* at 826.

Texas courts speak in unison on this point. *E.g.*, *Rise Above Steel Co., LLC. v. Liberty Mut. Ins. Co.*, 656 S.W.3d 577, 584 (Tex. App.—El Paso 2022, no pet.) ("an answer specifically denying [plaintiff] had performed all conditions precedent would not have been sufficient, as 'Texas Rule of Civil Procedure 54 requires the

32

opposing party to specifically deny which conditions precedent have not been performed or have not occurred'" (citations omitted)); *Granbury Marina Hotel, L.P. v. Berkel & Co. Contractors,* 473 S.W.3d 834, 840 (Tex. App.—El Paso 2015, no pet.) (holding that "Defendant denies that Plaintiff has satisfied all conditions precedent to the assertion of its claims as set forth in its Original Petition" was not a specific denial under Rule 54); *Hill v. Thompson & Knight*, 756 S.W.2d 824, 826 (Tex. App.—Dallas 1988, no writ) (holding that answer stating, "Defendant denies that all condition precedent … have been satisfied" failed to satisfy Rule 54). And TAMU's general allegation that "all of the conditions precedent for Plaintiff to recover have not been performed or occurred" (CR 280 (Ans.) ¶ 7) cannot suffice.

What is more, TAMU cannot paper over this failure by asserting in a later pleading, like its PTJ, that specific "conditions precedent" were not satisfied. Instead, when a party fails to specifically deny in its answer that particular conditions precedent were satisfied, and fails to amend its live answer to incorporate such a specific denial, it waives its right to assert that the conditions precedent have not been satisfied. *Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Tr. I*, 331 S.W.3d 500, 508 (Tex. App.—El Paso 2010, no pet.) (by failing to specifically deny in their answer that conditions precedent had been satisfied, "Appellants have waived their complaints regarding any failure of Appellee to satisfy conditions precedent"); *see also Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 147 (Tex. App.—

33

Dallas 2012, no pet.) (because defendant/appellant's "live pleading at the time of the summary judgment hearing" did not specifically deny that conditions precedent were satisfied, plaintiff had no burden with respect to those conditions precedent).

So it is here. By failing to comply with Rule 54's specific-denial requirement, TAMU waived any complaint about whether BE&K satisfied conditions precedent.

### 2. *TAMU confuses covenants for conditions precedent.*

Even if TAMU had not waived that argument, TAMU is wrong to contend that BE&K has not satisfied conditions precedent. TAMU's merits-focused arguments miss the mark, because the provisions that TAMU references are not conditions precedent at all, but rather covenants.

Texas courts distinguish between conditions precedent and covenants. "Conditions precedent to an obligation to perform are those acts or events which occur subsequently to the making of the contract that must occur before there is a right to immediate performance and before there is a breach of contractual duty." *Gulf Constr. Co. v. Self*, 676 S.W.2d 624, 627 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.). To determine whether a condition precedent exists, the Court must consider the entire contract to ascertain the parties' intentions. *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 109 (Tex. 2010). To make performance conditional, courts look for conditional language such as "if," "provided that," or "on condition that." *Id.* The absence of such phrasing is

34

"probative of the parties' intention that a promise be made, rather than a condition imposed." *Id.* (quoting *Criswell v. Eur. Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990)).

And importantly, Texas courts presume that terms are covenants, rather than conditions precedent. *Gulf Constr. Co. v. Self*, 676 S.W.2d 624, 627 (Tex. App. — Corpus Christi 1984, writ ref'd n.r.e.) (recognizing "a rule of construction that a forfeiture, by finding a condition precedent, is to be avoided when possible under another reasonable reading of the contract"). Thus, "[w]hen the intent of the parties is doubtful or when a condition would impose an absurd or impossible result, the agreement will be interpreted as creating a covenant rather than a condition." *Criswell v. Eur. Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990) (citations omitted); *see also Henshaw v. Texas Nat. Resources Found.*, 216 S.W.2d 566, 570 (Tex. 1949) ("Since forfeitures are not favored, courts are inclined to construe the provisions in a contract as covenants rather than as conditions.")

Reading the contract in its entirety, the payment provisions are covenants. They affect the timing and manner of payment—the types of provisions in construction contracts that Texas courts routinely construe as covenants, not conditions precedent. For instance, in *Gulf Construction*, the court addressed a provision stating, "Under no circumstances shall the general contractor be obligated or required to advance or make payments to the sub-contractor until the funds have

been advanced or paid by the owner or his representative to the general contractor." 676 S.W.2d at 627. Despite the seemingly iron-clad language, the court held that the provision "merely provides a covenant dealing with 'terms of payment' or 'manner of payment' rather than a condition precedent." *Id.* at 630.

Similarly, in *Sheldon L. Pollack Corp. v. Falcon Industries, Inc.*, the contract stated that the general contractor would pay the subcontractor "ninety percent on or about the 30th day of each month for work incorporated … [and] ten percent to be paid *following* completion of the subcontractor's work and *acceptance by owner and release to contractor of retainage*." 794 S.W.2d 380, 383–84 (Tex. App.—Corpus Christi 1990, writ denied) (emphases added). Even though the express terms provided for payment only after retainage was released, the court rejected the argument that the release of retainage was a condition precedent to the general contractor's payment obligation. *Id.* Instead, the court held that that contractual term was "a covenant which modified the time and manner of payment and not a condition of liability." *Id.*; *see also R.C. Small & Assocs. v. Southern Mech., Inc.*, 730 S.W.2d 100, 103–04 (Tex. App.—Dallas 1987, no writ) (construing a requirement for an architect's certificate before final payment as a covenant affecting the time of payment, not a prerequisite for payment); *contra FaulknerUSA, LP v. Alaron Supply Co.*, 322 S.W.3d 357, 360 (Tex. App.—El Paso 2010, no pet.)

36

(construing a payment provision as a condition precedent where the parties expressly stated as much and "assume[d] the risk of nonpayment").

TAMU cites two provisions that it contends create conditions precedent to final payment. The first, Section 12.1.2.1 provides that "[c]ompletion of all Work is a condition precedent to [BE&K's] right to receive final payment." (CR 118.) Despite that phrasing, the provision is not a condition precedent here. As an initial matter, BE&K's Petition does not allege a breach of the CMAR Agreement's final-payment provision, so the provision that TAMU relies on is irrelevant here.

Regardless, applying that section as a condition precedent would contravene *Criswell*, because it would impose an absurd or impossible result. BE&K contended from the outset that it had completed all work. (CR 9 (Pet'n) ¶ 27.) TAMU disagreed. Based on that disagreement, TAMU contends that Section 12.1.2.1's "condition precedent" is not satisfied, which TAMU contends precludes both any obligation to pay and jurisdiction. (Appellant's Br. at 19.) In other words, TAMU contends that treating that term as a condition precedent allows it to unilaterally determine not only whether it has an obligation to pay, but also whether the Court has jurisdiction to decide that question. That is an absurd or impossible result.[3]

---

[3] The parties reported to the Court that "BE&K's work is 100% complete on the Tarleton project." (CR 592).

37

Likewise, Section 10.3 of the CMAR Agreement does not impose a condition precedent. That section provides that TAMU has "no duty to pay the Contractor except on receipt by the ODR of . . . a complete Invoice certified by the A/E." (CR 109 (Contract § 10.3).) Despite the seemingly absolutist phrasing, context demonstrates that the entire contractual payment process is premised on covenants. For instance, the final-payment process includes submitting a "certified Application of Final Payment," which "follow[s] the completion of all Work, including punch list items, clean up, and the delivery of record documents." (CR 120 (Contract § 12.3.1.)) Other provisions similarly affect the timing and manner of payment. (*See, e.g.*, CR 109 (Contract § 10.3: providing the timing of payment as occurring when BE&K has completed certain documents and a specific percentage of the project; (Contract § 10.3.2.1: explaining the mechanics of retainage release requests); (Contract § 10.3.2.2: explaining when TAMU "can consider a retainage release").)

And beyond that context, Section 10.3's "no duty to pay" clause is less firm than the clause in *Gulf Construction*. There, the Texas Supreme Court addressed a clause reading, "Under no circumstance shall the general contractor be obligated or required to advance or make payments" until certain events occurred. 676 S.W.2d at 627. The Court held that it was a covenant, not a condition precedent. The same result should apply here.

38

TAMU claims that "Courts of Appeal that have reached this issue in the current century reject" BE&K's arguments, but the only case it cites is distinguishable. (App. Br. at 38 (citing *Calpine Producer Servs., LP v. Wiser Oil Co.*, 169 S.W.3d 783 (Tex. App.—Dallas 2005, no pet.).) This Court's opinion in *Calpine* addressed a contract between a gas supplier and a middleman that bought gas from the supplier. Importantly, the contract expressly stated that the middleman's obligation to pay was contingent on the middleman's receiving payment from its customers. *Id.* at 786, 790.

And just as importantly, the *Calpine* court expressly distinguished construction contracts from other contracts like the commodity-purchase contract at issue there. In concluding that the commodity-purchase contract imposed a condition precedent, the court noted that cases addressing construction contracts "uniformly refuse to construe language as a condition precedent which plainly conditions payment of a contractor or subcontractor on the occurrence of an event." *Id.* at 789. The Court further noted the reason for that difference: construction contracts implicate industry-based considerations regarding risk of nonpayment that did not apply "even by analogy," in *Calpine*. *Id.* In other words, the *Calpine* court acknowledged that clauses that might be considered conditions precedent in commodities contracts instead impose covenants—not conditions precedent—when they appear in construction contracts. *See, also, FaulknerUSA*, 322 S.W.3d at 360

(concluding that by explicitly assuming the risk of nonpayment, a party reflects that it intends contract provisions regarding payment to be conditions precedent rather than covenants). This case, of course, addresses a construction contract. *Calpine* is instructively distinguishable.

Here, construing the final pay application as a condition precedent in the way that the *Calpine* court treated the gas purchaser's payment obligations would effectively nullify BE&K's right to payment. Under the CMAR Agreement, submitting a final pay application required BE&K to waive all "claims and liabilities against this Contract." (CR 45 (Contract) § 10.3.1.4 (requiring BE&K to deliver "a complete release of all liens and claims arising out of the Work" as a requirement for requesting final payment); CR 690 (Final Pay Application); *see also* CR 120 (Contract § 12.3.2: explaining that in submitting final pay documentation, BE&K "shall furnish documentation establishing payment or satisfaction of all such obligations, such as . . . releases and waivers of claims and liens arising out of the Contract").) Because TAMU disputes BE&K's contract claims, BE&K cannot submit a final pay application without waiving those disputes. Again, that is an absurd result.

If a reasonable interpretation of the contract is possible, courts should avoid "the harsh results that might otherwise result from the non-occurrence of a condition" and instead interpret the contract to create a covenant. *Solar Applications*

at 109–10 (quoting Restatement (Second) of Contracts § 227 cmt. d). Here, a reasonable interpretation of the contract renders the final-payment-application provisions as covenants on TAMU's obligation to pay which affect the overall timing and manner of payment for BE&K's work.

In the alternative, regardless of whether the Court considers these provisions as conditions precedent or covenants, TAMU's arguments and evidence, at best, create disputes of fact regarding whether the "Work," as the CMAR Agreement defines the term, was completed and the other issues that TAMU attempted to raise in the trial court. *See, e.g.,* CR 588–90 (Affidavit of Read Ballew countering TAMU's claims). *See also* CR 592–93 (Parties' joint status update to the trial court describing that BE&K submitted a final pay application and TAMU rejected it, but the parties agree that "BE&K's work is 100% complete"); CR 602 & 607 (TAMU's representative stating that he did not know if any of the statements made in his affidavit were still accurate and failing to provide details or support regarding BE&K's failures to fulfill purported conditions under the contract); CR 588–90 (Affidavit of Read Ballew describing BE&K's efforts to satisfy the purported preconditions to final payment).) These merits disputes are not ripe for adjudication in this posture. Accordingly, the Court should affirm the trial court's denial of TAMU's plea for this reason.

### 3. *TAMU's position produces absurd results.*

Texas courts routinely avoid contract interpretations that would lead to absurd results and those that would be "unreasonable, inequitable, and oppressive." *See Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987); *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 219 (Tex. 2022). Indeed, courts will not read contract provisions to form conditions precedent if doing so would lead to absurd results. *Criswell*, 792 S.W.2d at 948. TAMU's construction of the payment provisions collapses under its own logic, as it renders any payment obligation wholly illusory and leads to absurd results.

A party who "prevents or makes impossible" the occurrence of a condition precedent upon which its liability under a contract depends cannot rely on the nonoccurrence to escape liability. *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 344 S.W.3d 514, 519 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (collecting cases). According to TAMU, it has an obligation to pay only when it does not dispute BE&K's pay application. In other words, BE&K must waive all its claims under the contract and acquiesce to all TAMU's claims in order to receive payment. This position awards TAMU unfettered discretion in determining whether to perform and creates a condition precedent that is impossible to satisfy in the very situation where legal action is necessary—when a dispute arises.

Where the promisor retains an unlimited right to decide the nature or extent of their performance, that contract is illusory. Restatement (Second) Contracts § 34, cmt. b. "When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract." *In re 24R*, 324 S.W.3d 564, 567 (Tex. 2010). TAMU is not bound by any mutual promise; it can deny—unilaterally and without limitation—that a condition precedent was met and deprive BE&K of a mechanism to contest that denial. The Court must construe the contract "to promote mutuality and to avoid a construction that makes promises illusory." *Avasthi & Assocs., Inc. v. Banik*, 343 S.W.3d 260, 264 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing *Young v. Netherlin*, 102 S.W.3d 415, 420 (Tex. App.—Houston [14th Dist.] 2003, no pet.)). Therefore, to ensure mutuality of obligation, TAMU's obligation to pay cannot be based on its own unreviewable discretion.

Further, TAMU's position creates an absurd paradox. If there is a dispute over a pay application, TAMU can say BE&K has not fulfilled a condition precedent to payment, deny that payment, and deprive BE&K of its day in court. If BE&K waives its claims, however, TAMU will accept the pay application and say that BE&K has fulfilled all conditions precedent, creating jurisdiction under Chapter 114. But if there is no dispute over a pay application, there is no need for litigation,

and no need for TAMU to waive its sovereign immunity. This is an absurd result because the existence of a dispute bars the very process needed to resolve it.

Here, reversing the trial court and adopting TAMU's position would create absurd results by effectively awarding TAMU authority to be the arbiter of jurisdiction in State trial court. TAMU cannot skirt its contractual obligations under the shield of sovereign immunity when invocation of that immunity is based on a purported condition precedent that is impossible to satisfy.

### E. TAMU's assertion that the judiciary lacks jurisdiction because BE&K failed to provide notice is both legally and factually wrong.

BE&K's purported failure to comply with Chapter 2260's notice procedures does not preclude TAMU's waiver of sovereign immunity under Chapter 114. Indeed, this Court recently rejected a similar jurisdictional argument concerning contractual pre-suit ADR procedures in a construction dispute involving Texas Southern University. *Texas S. Univ. v. Westwood Restoration, LLC*, No. 15-24-00064-cv, 2025 WL 2078670 at *3 (Tex. App.—Austin [15th Dist.] July 24, 2025, no pet. h.) (mem. op.).

In *Westwood Restoration*, this Court explained that the remedies provided in Chapter 114 of the Civil Practice and Remedies Code and Chapter 2260 of the Government Code represent two "alternative" and "mutually exclusive" methods for government-contract disputes. *Id.* Because the petition invoked Chapter 114, the Court looked at Chapter 114's pre-suit requirements, despite the contracts at issue

44

incorporating Chapter 2260's pre-suit requirements. In doing so, the Court concluded that the *statutory* prerequisites to jurisdiction in Chapter 2260 did not apply because "Chapter 114 enforces only *contractual* pre-suit ADR procedures." *Id.* at *3 n.22 (emphasis in original). Therefore, the Chapter 2260 ADR requirements incorporated in the contract were enforceable but not jurisdictional. *Id.* at *3 (discussing *San Jacinto River Auth. v. City of Conroe*, 688 S.W.3d 124, 131 (Tex. 2024)).

The same should be true here. Chapter 114 does not include a pre-suit notice requirement. Therefore, any notice requirement included in the contract is enforceable but not jurisdictional. *Id.* Accordingly, BE&K's purported failure to comply with the contract's notice provision is not a jurisdictional bar precluding Chapter 114's immunity waiver.

In any event, BE&K provided sufficient notice. The Texas Supreme Court treats "substantial compliance [as] the appropriate standard when evaluating whether a party complied with a contractual notice condition." *James Constr. Grp., LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 405 (Tex. 2022) (holding that a complete lack of written notice did not constitute substantial compliance under a contractual notice provision). Under the Texas Government Code, a party must "provide written notice to the unit of state government of a claim of breach of contract." TEX. GOV'T CODE § 2260.051(b). A "unit of state government" includes a "university system or

45

institution of higher education." *Id.* § 2260.001(4). No provision of Chapter 2260 dictates that the party issuing the notice must address it to a specific person within the "unit of state government." While the "chief administrative officer" or a contract-designated official must eventually "examine the claim," the law does not require that notice be directed at any specific person in the first instance. *Id.* § 2260.052(a).

On August 2, 2019, TAMU sent a letter to BE&K describing the parties' "past correspondence" regarding the dispute and specifically referenced a July 23, 2019 letter from BE&K to TAMU. (CR 302–03.) BE&K directed the July letter to TAMU's Office of Facilities Planning and Construction, the office in the best position to respond to and resolve the dispute given its familiarity with BE&K's work on the project. (*Id.*) The August 2, 2019 TAMU letter admits that "a great deal of information has been submitted to support [BE&K's] requests for time extensions at various times." (*Id.*) The record demonstrates that BE&K submitted numerous written notices regarding its contract dispute. It is immaterial that BE&K did not direct its written notices to the Chancellor, as TAMU had actual notice of this dispute. *See Texas Utils. Elec. Co. v. Aetna Cas. & Sur. Co.*, 786 S.W.2d 792, 793 (Tex. App.—Dallas 1990, writ denied) (notice substantially complied with contract requirements even though the incorrect entity received it). At an absolute minimum, it had constructive notice and cannot now claim otherwise. *See*

46

*Thompson v. Six Shooter Enters., LLC*, 633 S.W.3d 107, 115 (Tex. App.—El Paso 2021, no pet.) (notice "also embraces knowledge of all those facts which reasonable inquiry would have disclosed").

For these reasons, TAMU's demand for contractual "exactitude" under an immaterial notice technicality does not bar BE&K from bringing this breach of contract suit. *See James Constr. Grp.*, 650 S.W.3d at 405–06.

## CONCLUSION & PRAYER

The Court should affirm the trial court's denial of TAMU's PTJ. Chapter 114 waived TAMU's sovereign immunity from suit, as Chapter 114's plain text shows, as *Pepper Lawson* confirms, and as authorities applying the LGCCA further confirm. TAMU's attempt to contort Chapter 114's straightforward jurisdictional inquiry into a free-for-all on the merits is both unfortunate and unconvincing. It relies on a misreading of both *Miranda* and *Pepper Lawson* and a blind eye to Chapter 114's plain text. The Court should not indulge TAMU's cart-before-the-horse gambit and should hold that evidence about whether conditions precedent were satisfied is simply irrelevant at the jurisdictional determination.

But even if the Court were to consider TAMU's merits defenses now, it should reject them because TAMU waived any objection to conditions precedent, because the "conditions precedent" it identifies are actually covenants, because fact disputes preclude the Court from resolving TAMU's merits defenses now, and because the

47

thrust of TAMU's arguments is illogical and inequitable. It simply cannot be that a public-agency defendant has unilateral authority to determine whether it must pay a contractual sum, and to use that authority to control the judiciary's authority to answer that question. Yet that is what TAMU urges here. The Court should affirm.

Respectfully Submitted,

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

/s/ *Thomas O. Crist*

Thomas O. Crist
State Bar No. 24119645
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Phone: (216) 363-4500
Facsimile: (216) 363-4588
tcrist@beneschlaw.com

MEHAFFYWEBER, PC

Frank A. Domino
State Bar No. 24038864
One Allen Center
500 Dallas, Suite 2800
Houston, Texas 77002
Phone: (713) 655-1200
Facsimile: (713) 655-0222
fdomino@mehaffyweber.com

**Counsel for Appellee,**
**BE&K BUILDING GROUP, LLC**

48

**CERTIFICATE OF SERVICE**

This is to certify that on the 11th day of August 2025, a true and correct copy of the foregoing Appellee's Brief of BE&K Building Group, LLC was e-filed in accordance with the local rules of the Fifteenth Judicial Court of Appeals and forwarded via eserve to all counsel of record.

/s/ *Thomas O. Crist*
Thomas O. Crist

**CERTIFICATE OF COMPLIANCE**

This is to certify that this Brief of Appellee BE&K Building Group, LLC complies with Texas Rule of Appellate Procedure 9 and, based on the software's word count tool of the applicable sections, contains a total of 11,083 words.

/s/ *Thomas O. Crist*
Thomas O. Crist

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Thomas Crist on behalf of Thomas Crist
Bar No. 24119645
tcrist@beneschlaw.com
Envelope ID: 104295670
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Brief of Appellee BE&K Building Group
Status as of 8/13/2025 7:07 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Frank Domino | 24038864 | frankdomino@mehaffyweber.com | 8/12/2025 6:19:33 PM | SENT |
| Athena Leyton | | athena.leyton@oag.texas.gov | 8/12/2025 6:19:33 PM | SENT |
| Thomas Crist | 24119645 | tcrist@beneschlaw.com | 8/12/2025 6:19:33 PM | SENT |
| Nicole A.Myette | | nicole.myette@oag.texas.gov | 8/12/2025 6:19:33 PM | SENT |
| William Farrell | | biff.farrell@oag.texas.gov | 8/12/2025 6:19:33 PM | SENT |
| Legal Secretaries | | osg-legalsecretaries@oag.texas.gov | 8/12/2025 6:19:33 PM | SENT |
| Jacob Beach | | jacob.beach@oag.texas.gov | 8/12/2025 6:19:33 PM | SENT |
| Jonathon Korinko | | jkorinko@beneschlaw.com | 8/12/2025 6:19:33 PM | SENT |
| Docket Department | | Docket2@beneschlaw.com | 8/12/2025 6:19:33 PM | SENT |